UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADE BROWN,

        Plaintiff,

v.

SABRINA DAVIS et al.,

        Defendants.

_____/

Case No. 1:18-cv-1362

Honorable Janet T. Neff

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kerr, Wilkerson, Gardner, Frelick, Greshaw, Fornwall, Maranka, Guestfellia, Unknown Party #1 named as Psychologist Bookie or Booker, Barber, and Unknown Party #2 named as Deputy Warden Vastaw or Rashaw.

## Discussion

I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Resident Unit Manager Sabrina Davis, Warden John Davids, Counselor Molly McQuiston, Sergeant Jill Kerr, Corrections Officer Unknown Wilkerson, Corrections Officer Unknown Gardner, Corrections Officer Unknown Frelick, Corrections Officer Unknown Greshaw, Corrections Officer Unknown Fornwall, Mental Health Unit Chief Unknown Maranka, Psychologist Unknown Guestfellia, Unknown Party #1 named as Psychologist Bookie or Booker, Inspector Unknown Barber, and Unknown Party #2 named as Deputy Warden Vastaw or Rashaw.

Plaintiff alleges that he filed a lawsuit in this Court in July of 2018, Case No. 1:18-cv-812, which is currently pending. Defendants Davis and Davids were also named as defendants in Case 1:18-cv-812. On August 2, 2018, Plaintiff had been misconduct free for 90 days and had just been moved to B-wing. Plaintiff applied for a loss of privileges (LOP) waiver so that he could go outside, play basketball, socialize with his friends, access the telephone and email, and use electronics. Defendant McQuiston gave Plaintiff a good report and Defendant Davis approved the waiver. Defendant McQuiston told Plaintiff that as long as he remained ticket free, he could have the waiver renewed every 30 days.

On August 17, 2018, Plaintiff was ordered to provide copies for service on a number of the defendants listed in Case No. 1:18-cv-812, including Defendants Davis and Davids. On September 2, 2018, Plaintiff applied for a waiver. Defendant McQuiston typed the request up

and reported that Plaintiff was following the rules and staying misconduct free. Plaintiff's waiver was approved by Defendants Davis and Davids.

Plaintiff states that he sent the ordered copies for service to the Court on August 28, 2018. Waivers of service were returned executed to the Court on October 2, 2018. Plaintiff put in a request to have his waiver renewed on October 2, 2018. At this point, Plaintiff had been ticket free for five months. Plaintiff states that when he made the request, Defendant McQuiston told him that he should wait until his current waiver expired, although she had not done so in the past. Plaintiff repeatedly asked her about the waiver request and Defendant McQuiston finally told him that she had submitted it on October 11 or 12 of 2018. Near the end of October, Defendant McQuiston told Plaintiff that Defendants Davis and Davids had denied the waiver. Plaintiff states that he was sure it was because of his pending lawsuit. However, Defendant McQuiston lied and said that it was because Plaintiff had been rude to staff. Plaintiff asked every member of staff if they had a problem with him, and they denied it. When Defendant Davis made rounds, she told Plaintiff that his behavior did not warrant the waiver. When Plaintiff objected that it was because of the lawsuit he had filed, Defendant Davis said that those were the consequences for suing staff.

Plaintiff next made a waiver request on November 2, 2018, and on November 8, 2018, Defendants Davis, Davids, and McQuiston had him moved to A-wing, took his television and electronics, restricted his phone, email, and media privileges, and denied his 30-day LOP waiver. At 1:30 p.m. on November 9, 2018, Defendant McQuiston came to Plaintiff's cell and told him that they had made a mistake and that he was going back to B-wing. Plaintiff packed up, but no one came to move him. Finally, on November 13, 2018, Defendant McQuiston came to see Plaintiff and told him that they knew he did not get kicked out of his group, but he could not move back to B-wing because Defendants Davis and Davids did not want him there. Defendant

McQuiston refused to approve Plaintiff's waiver or to give Plaintiff a copy of his waiver requests and denials.

Plaintiff states that he has talked to Defendants McQuiston, Greshaw, Kerr, Gardner, Wilkerson, Fornwell, and Frelick, but none of them will move him back to B-wing or restore his privileges. Plaintiff claims that they are failing to protect him from the harassment and retaliatory conduct of Defendants Davis and Davids. Plaintiff believes that if he drops his lawsuit, he will be moved back to B-wing. Plaintiff remained ticket free as of the date he filed this lawsuit.

Plaintiff claims that his placement in A-wing and the denial of privileges is causing him to suffer stress, anxiety, and depression. Plaintiff kited Defendant Maranka, but never received a response. On November 14, 2018, Plaintiff spoke with Defendant Unknown Party #1 named as Bookie or Booker, who refused to help Plaintiff with his placement and loss of privileges. Around the same time, Plaintiff saw Defendant Davis and asked if he could be moved back to B-wing. Defendant Davis refused his request. When Plaintiff said that he would not drop his lawsuit, Defendant Davis told him to get comfortable in A-wing.

On November 20, 2018, Plaintiff saw members of the Security Classification Committee (SCC), as well as Defendant McQuiston, Defendant Unknown Party #2 named as Vastaw or Rashaw, Defendant Barber, and Defendant Guestfellia. Defendant Unknown Party #2 named as Vastaw or Rashaw told Plaintiff that he was going to keep him in A-wing for "awhile."

Plaintiff claims that Defendants' conduct constitutes a violation of his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory, punitive, and nominal damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    III.    Equal protection

Plaintiff alleges that Defendants' refusal to grant his request for waiver of LOP or to transfer him out of the segregation unit violated the Equal Protection Clause of the Fourteenth Amendment because they were discriminating against him for filing a lawsuit. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Although Plaintiff alleges that Defendants improperly engaged in retaliatory treatment of him, he does not allege that he was treated differently than others who were similarly situated. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim.

6

## IV. Eighth Amendment

Plaintiff also claims that Defendants violated his rights under the Eighth Amendment because they were deliberately indifferent to the mental anguish he suffered as a result of their unfair treatment of him. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff states that he has been improperly denied access to phone, email, media, and yard time, and is wrongly confined on the segregation unit. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C.

§1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

Plaintiff also claims that Defendants McQuiston, Kerr, Wilkerson, Gardner, Frelick, Greshaw, Fornwall, Maranka, Guestfellia, Unknown Party #1, Barber, and Unknown Party #2 failed to protect Plaintiff from retaliation by Defendants Davis and Davids in violation of the Eighth Amendment. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). As noted above, Plaintiff has failed to show that he was subjected to anything more than routine discomfort. The failure to protect him from such discomfort does not violate the Eighth Amendment.

Finally, the Court notes that absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, his claim for emotional damages is barred.

V.  Retaliation

Finally, Plaintiff claims that Defendants retaliated against him for his pending lawsuit against Defendants Davis and Davids. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court notes that Plaintiff's retaliation claims against Defendants Kerr, Wilkerson, Gardner, Frelick, Greshaw, Fornwall, Maranka, Guestfellia, Unknown Party #1 named as Psychologist Bookie or Booker, Barber, and Unknown Party #2 named as Deputy Warden Vastaw or Rashaw are based solely on their failure to intervene on his behalf to have him transferred to B-unit and be granted a LOP waiver. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff fails to allege any facts to support his conclusion that Defendants Kerr, Wilkerson, Gardner, Frelick, Greshaw, Fornwall, Maranka, Guestfellia, Unknown Party #1, Barber, and Unknown Party #2 were motivated to retaliate against him because he filed a lawsuit against Defendants Davis and Davids. Accordingly, his speculative allegation fails to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kerr, Wilkerson, Gardner, Frelick, Greshaw, Fornwall, Maranka, Guestfellia, Unknown Party #1 named as Psychologist Bookie or Booker, Barber, and Unknown Party #2 named as Deputy Warden Vastaw or Rashaw will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Defendants Davis, Davids, and McQuiston remain. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment deliberate indifference and Fourteenth Amendment equal protection claims against the remaining Defendants. Accordingly, the only remaining claims are his First Amendment retaliation claims against Defendants Davis, Davids, and McQuiston.

An order consistent with this opinion will be entered.

Dated: January 22, 2019                        /s/ Janet T. Neff
                                               Janet T. Neff
                                               United States District Judge

11