UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADE BROWN #884273,

    Plaintiff,

v.

SABRINA DAVIS, et al.,

    Defendants.
_____/

Hon. Janet T. Neff

Case No. 1:18-cv-1362

## **REPORT AND RECOMMENDATION**

The parties have filed cross-motions for summary judgment. (ECF Nos. 28 and 30.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **DENIED**.

### **Background**

Plaintiff, a state prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 against a number of MDOC employees alleging violations of his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff's sole remaining claim is that Defendants Sabrina Davis, John Davids, and Molly McQuiston retaliated against him for filing a lawsuit against Defendants Davids and Davis (and other MDOC employees) by denying him Loss of Privileges (LOP) waivers and transferring him to a more restrictive housing unit. The events at issue in this case occurred during 2018 (and into early 2019 after Plaintiff filed this suit) while Plaintiff was housed at the Ionia Correctional Facility (ICF).

McQuiston[1] was a Prison Counselor, Davis was a Resident Unit Manager, and Davids was the Warden at ICF.  (ECF No. 29-3 at PageID.170; ECF No. 29-4 at PageID.174; ECF No. 29-5 at PageID.178.)

In May 2018, Plaintiff was placed in the Start Program in 2-Unit B-Wing.[2]  (ECF No. 30 at PageID.186.)  The Start Program is designed to assist prisoners who have behavioral issues with developing skills and abilities that will enable them to successfully transition to the general population and potentially a lower security level.  (ECF No. 30-1 at PageID.196.)  The program provides a higher level of safety and security than a normal Level V general population setting. (*Id.*)  Participants are granted some of the benefits of general population custody and are required to participate in group and individual counseling sessions.  Participants move through the program in stages, with stages 0 or 1 being the most restrictive and allowing the fewest privileges.  As participants move through the stages (up to stage 3), they are provided more privileges as they prepare for eventual placement in a traditional general population setting.  (*Id.* at PageID.198–200.)  The program also offers participants the opportunity to obtain LOP waivers in 30-day increments, so long as the participant is 90-days misconduct-free prior to applying for a waiver. (*Id.* at PageID.196.)

Plaintiff began the Start Program at stage 0.  At that time, he was on LOP until September 28, 2020.  (ECF No. 30-1 at PageID.201.)  By August 2018 Plaintiff had progressed to stage 3 of the program and was housed in 3-Unit B-wing.  (ECF No. 30 at PageID.186.)  Because

---

[1] In his motion and affidavit Plaintiff refers to McQuiston also as Darling.  (ECF No. 30; ECF No. 33-1.)

[2] Plaintiff included an averment at the end of his summary judgment motion that substantially complies with the requirements of 28 U.S.C. § 1746.  *See Bonds v. Cox*, 20 F.3d 697, 704 n.2 (6th Cir. 1994) (stating that "28 U.S.C. § 1746 requires only substantial compliance with its terms"). Accordingly, the Court may consider the statements in Plaintiff's motion in the same manner as an affidavit for purposes of Rule 56.

Plaintiff was misconduct-free for 90 days at the time, he applied for a LOP waiver on or about August 2. McQuiston submitted his request, and Davis and Davids approved it. (*Id.*) As a result of the waiver, Plaintiff was given a television, allowed to go outside every day, use a telephone and J-Pay machines, order SecurePaks, leave his cell without handcuffs, and receive porter jobs. (*Id.*) In early September 2018, Plaintiff submitted another waiver application through McQuiston. In the application, McQuiston reported that Plaintiff "has demonstrated that he is able to communicate respectfully with staff while complying with unit rules and program expectations." (ECF No. 29-2 at PageID.167.) Davis and Davids approved the application, granting Plaintiff another thirty-day waiver, until October 22, 2018. (*Id.*)

In July 2018, Plaintiff filed a complaint in this district pursuant to Section 1983 against Davis, Davids, and other ICF employees captioned *Ade Brown v. Sabrina Davis, et al.*, No. 1:18-cv-812 (W.D. Mich.) (the 812 Case). On September 19, 2018, Davids and Davis signed Waivers of Service, which were filed with the Court in the 812 Case on October 2, 2018. (Case No. 1:18-cv-812, ECF Nos. 8 and 9.)

Plaintiff applied for his next LOP waiver on October 2, 2018. In contrast to her prior practice in handling Plaintiff's August and September requests, McQuiston told him to wait until his prior waiver expired to apply for a new one. (ECF No. 30 at PageID.186.) Plaintiff nonetheless requested that McQuiston submit his request. With his prior waiver nearing expiration and having heard nothing from McQuiston, about a week later Plaintiff sent her a note asking about the status of his application, to which McQuiston responded, "Done." (ECF No. 30 at PageID.189; ECF No. 30-1 at PageID.208–09.) In late October, McQuiston told Plaintiff that Davis and Davids denied his request for a waiver because his behavior had been bad and he was rude to staff. Plaintiff denies that his behavior was bad and notes that, at the time, he had gone

3

six months without a misconduct ticket. (ECF No. 30 at PageID.186.) Plaintiff asked McQuiston for a copy of the denial but McQuiston told him that Davis and Davids said he could not have a copy. (*Id.* at pageID.189.) Plaintiff claims that, at the end of October when Davis was making rounds, he told Davis that she denied his waiver request because of his lawsuit and Davis responded, "well this is what happened when you sue me and my staff." (*Id.*)

On November 8, 2018, McQuiston told Plaintiff that he had to move back to A-wing because he had been kicked out of his counseling/therapy group meetings. Plaintiff was also moved from stage 3 to stage 2, which resulted in loss of several privileges. The following day, McQuiston saw Plaintiff and told him that they (McQuiston, Davis, and Davids) were mistaken that Plaintiff had been kicked out of his group therapy, but she told him they did not want him moved back over to B-wing. (*Id.* at PageID.190.) Plaintiff applied for a waiver in November, but McQuiston told him that Davis and Davids denied it, and he could not have a copy of the denial. Beginning in December and continuing into 2019, McQuiston told Plaintiff that she was not going to bother submitting his requests because she, Davis, and Davids would not approve them.[3] (*Id.*)

## Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v.*

---

[3] In his summary judgment motion/verified statement of facts, Plaintiff mentions that Defendants had him transferred to Marquette Branch Prison in March 2018. (ECF No. 30 at PageID.190.) Although Defendants address this allegation in their response to Plaintiff's motion, Plaintiff states that he is not asserting the transfer as a retaliatory act in this case. (ECF No. 39 at PageID.325.)

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Discussion

The requirements for a valid First Amendment retaliation claim are well established.  In order to state a First Amendment retaliation claim, a plaintiff must establish that:  (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d

5

378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff can show that his protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct, "the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct." *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

I.  **Defendants' Motion**

    A.  **Defendant McQuiston**

Defendants argue that McQuiston is entitled to summary judgment because Plaintiff cannot establish any element of his claim against her.

First, while Defendants concede that filing a lawsuit is conduct protected by the First Amendment, *see King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005), they argue that Plaintiff's lawsuit was not protected conduct as to McQuiston because Plaintiff did not name her as a defendant the 812 Case. Defendants fail to cite any authority for the proposition that a prison official can be held liable for retaliation only if he or she was named in the lawsuit or grievance constituting First Amendment activity. In *Shoults v. White*, No. 5:17-CV-150, 2018 WL 4761659 (W.D. Ky. Oct. 1, 2018), the court rejected the same argument Defendants make here, couched in terms of motive:

> English argues that because he is not named in the Lyon County lawsuit, that Plaintiff has failed to allege any retaliatory motive. In other words, English suggests that it is necessary for him to have been named in the Lyon County lawsuit to have retaliatory motive. But it is also possible that English may have improperly restrained Casey in retaliation for Plaintiff's lawsuit against his co-workers. It is not necessary to be named in a lawsuit or grievance to satisfy the

> retaliatory motive requirement. All that is required for a retaliation claim is that English engaged in an adverse action against Plaintiff that is motivated at least in part by the Plaintiff's protected conduct.

*Id.* at *3. As in *Shoults*, Plaintiff need not have named McQuiston in his lawsuit to establish a valid retaliation claim against her. So long as Plaintiff can show that McQuiston took an adverse action against him with a retaliatory motive, he has a valid claim.

Next, Defendants argue that Plaintiff fails to establish an adverse action. As to the LOP waivers, Defendants argue that such a waiver cannot be a sufficient deterrent to the exercise of protected activity because the waiver is not guaranteed and is a privilege that depends on the prisoner's conduct. Defendants argue that denial of a waiver simply results in the prisoner maintaining his preexisting LOP status. An adverse action is "one that would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (internal quotation marks omitted). In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit held that a loss of privileges for seven days—"rights to access exercise facilities, to attend group meetings (including Bible class), to use the telephone, to have visitors, to access the general library, and to access the activity room"—was not *de minimis* retaliatory action and thus presented a question for the factfinder as to whether the deprivation of privileges "'pose[d] a sufficient deterrent threat to be actionable.'" *Id.* at 267 (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). The *Maben* court also cited the Sixth Circuit's observation in *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010), that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." While it is true that Plaintiff was already subject to a long-term LOP, pursuant to the Start Program, prison officials provided Plaintiff an avenue for regaining those privileges: stay misconduct-free for 90 days. Although the program description does not so provide (ECF No. 30-1 at PageID.196), Defendants claim that participants must also show positive behavior and not merely be free of misconducts to be eligible for waivers. (ECF No. 29-

3 at PageID.171–72.) Regardless, it is undisputed that Plaintiff met such requirements at the time he applied for and received waivers in August and September, and a reasonable jury could conclude that he would have continued to receive waivers so long as he met those requirements. Because denying Plaintiff a waiver for retaliatory purposes would "result in more restrictions and fewer privileges," *Hill*, 630 F.3d at 474, the adverse action requirement is met. For the same reasons, a move from stage 3 to stage 2, which resulted in fewer privileges, could also be sufficiently adverse to constitute adverse action.

As for the transfer from B-Wing to A-Wing, it is true, as Defendants note, that the Sixth Circuit held that a transfer ordinarily would not deter a prisoner of ordinary firmness from engaging in protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). On the other hand, a transfer to a more secure section or facility can be adverse action "because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population." *Hill*, 630 F.3d at 475. *See also Roden v. Floyd*, No. 2:16-cv-11208, 2018 WL 3259806, at *9 (E.D. Mich. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 1324738 (Mar. 15, 2018) (concluding that "a reasonable trier of fact could conclude that the Defendants' transfer of Plaintiff from JCF and his removal from the Jackson College program . . . caused more than a de minimis injury and resulted in more restrictions and fewer privileges") (internal quotation marks omitted). Here, Plaintiff claims that, as a result of, or in connection with, his transfer from B-wing to A-wing, his program stage was reduced from 3 to 2 and he was no longer allowed to order SecurePaks, get a job, go outside and have visits without handcuffs, use his telephone or electronics, and no longer had the potential to complete the Start Program and transfer to a Level 4 facility. (ECF No. 30 at PageID.191.) Based on Plaintiff's allegations, a reasonable jury could conclude that Plaintiff's transfer to A-wing subjected Plaintiff to more

restrictions and fewer privileges and was sufficiently adverse to deter a reasonable prisoner from engaging in protected conduct.

Finally, Defendants argue that Plaintiff cannot establish a causal connection between the 812 Case and McQuiston not submitting his LOP waivers and transferring him to the A-wing. The Court disagrees. First, although temporal proximity is usually not sufficient by itself to establish a causal connection in a retaliation claim, in some cases temporal proximity alone "may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted). Even if this case does not present circumstances warranting an inference based solely on temporal proximity, temporal proximity is *some* evidence of a retaliatory motive. It is undisputed that Plaintiff received waivers in August and September and continued to be misconduct-free through at least the end of 2018. Yet, according to Plaintiff, shortly after Davis and Davids received notice of the 812 Case, McQuiston altered the way she handled Plaintiff's waiver requests by telling him to wait until the previous waiver period had expired. And although McQuiston states that beginning in October 2018 she did not recommend Plaintiff for any more waivers due to regression in his behavior, Plaintiff disputes McQuiston's claim that his behavior deteriorated, and he has presented evidence contradicting McQuiston's claim that she did not submit any waiver requests for Plaintiff after the September request. Thus, a question of fact remains as to whether a causal connection exists between Plaintiff's lawsuit and McQuiston's conduct.

Defendants also contend that Plaintiff cannot show that McQuiston was aware of the 812 Case. However, Plaintiff has presented evidence that McQuiston attended his deposition in another case, during which he discussed his claims against Davis and Davids in the 812 Case.

9

(ECF No. 39-1 at PageID.338.)  Moreover, a reasonable jury, crediting Plaintiff's testimony and exhibits, could conclude from all the circumstances that McQuiston was aware of the 812 Case against Davis and Davids.

### B. Defendants Davis and Davids

Defendants Davis and Davids argue that Plaintiff's claim against them fails because, while they were responsible for approving waivers, they did not receive waiver requests for Plaintiff after September and thus could not have denied waiver requests they did not receive.  (ECF No. 29-4 at PageID.175; ECF No. 29-5 at PageID.179.)  As set forth above, however, Plaintiff has presented evidence that McQuiston submitted waiver requests in both October and November, thus refuting McQuiston's, Davis's, and Davids's statements in their affidavits.  Moreover, Plaintiff's allegations in his verified summary judgment motion suggest that Davis and Davids wanted Plaintiff moved to A-wing and did not want him back in B-wing because of his lawsuit against them.  Finally, Davis's and Davids's argument that they had no personal involvement in the alleged retaliation fails in light of Plaintiff's evidence creating an issue of fact as to whether Davis and Davids subjected Plaintiff to retaliatory acts.

Defendants further argue that they are entitled to qualified immunity on Plaintiff's claims. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Qualified immunity balances two important interests—the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. As discussed above, an issue of fact remains as to whether Defendants retaliated against Plaintiff for filing the 812 Case. A prisoner's filing of a lawsuit is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, and that right was clearly established. *See Smith*, 250 F.3d at 1037; *Alexander v. Jackson*, No. 05-73073, 2008 WL 559518, at *2 (E.D. Mich. Feb. 27, 2008). Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's claims.

## II.     Plaintiff's Motion

Plaintiff argues that he is entitled to summary judgment because he has demonstrated that Defendants retaliated against him, and Defendants' statements in their affidavits are inconsistent and not credible. As set forth above, however, disputes of fact remain as to whether Defendants were motivated by unlawful retaliation or whether they denied Plaintiff's requests for LOP waivers and transferred him to A-wing for a legitimate reason unrelated to Plaintiff's exercise of his First Amendment rights.[4]  Because the initial burden on summary judgment is on the moving party to

---

[4] In their response to Plaintiff's motion, Defendants cite a grievance response by RUM K. Brege as support for their assertion that Plaintiff was not exhibiting positive behavior, as required of program participants. (ECF No. 35 at PageID.262.) However, "prison grievances . . . constitute

conclusively show no genuine issues of material fact remain, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and Plaintiff has not met his initial burden. Plaintiff's motion for summary judgment should be denied.

## Conclusion

For the reasons set forth above, I recommend that the Court **deny** Defendants' Motion for Summary Judgment (ECF No. 28) and Plaintiff's Motion for Summary Judgment. (ECF No. 30.)

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: February 12, 2020                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge

---

hearsay . . . and Defendants offer no argument that these documents are admissible pursuant to an exception to the rule against hearsay." *McMurry v. Caruso*, No. 1:10CV1206, 2011 WL 7396314, at *13 (W.D. Mich. Dec. 29, 2011), *report and recommendation adopted*, 2012 WL 560860 (W.D. Mich. Feb. 17, 2012).